THE STATE OF OHIO, APPELLEE, *v.* FRYE, APPELLANT.

(No. 11281—Decided November 30, 1970.)

*Mr. William A. McClain, Mr. Ralph E. Cors* and *Mr. Jack Sherman, Jr.,* for appellee.

*Messrs. Taft, Stettinius & Hollister,* for appellant.

HESS, J. This is an appeal from a judgment of the Hamilton County Municipal Court finding the defendant guilty on a charge of assault and battery.

The record discloses that on January 17, 1970, the defendants, Delbert Frye, herein referred to as Frye, and William Collier, herein referred to as Collier, were working at their place of employment with the Hilton-Davis Chemical Company in Hamilton County, Ohio. The com-

pany was engaged in the chemical business which necessitated the use of drums.

Collier worked as a drum inspector in the drum field area of the chemical company where drums which had contained chemicals were conditioned and stored. His duty required him to load and unload carts used to haul drums about the company plant, inspect the drums and stack them as directed.

Frye operated a tractor type vehicle known as a mule to transport carts loaded with drums to and from the drum yard. Neither Collier nor Frye had any supervision over the other.

On or about 9:25 a. m. on January 17, 1970, Collier met Frye and asked him if he wanted Collier to move his automobile parked in the drum yard so that Frye could get to an empty cart. Frye answered in the negative. At about 12:30 p. m., Collier noticed a cart full of empty drums and stated: "[they were parked] * * * next to my automobile * * * about six feet from it." About fifteen minutes later, Collier observed Frye driving his mule vehicle into the yard and Collier suggested Frye move the cart. Frye replied, "no, not now, I ain't got time * * * there is too much to do. It's getting late in the day." Thereupon, Frye continued on to the drum shed which housed the office of the supervisor, one Mr. Hauss, and the drum reconditioning operation.

Frye went into the drum shed to look on the wall of the supervisor's office for work orders. The wall of the supervisor's office was adjacent to the exterior door of the drum shed. Collier followed Frye into the drum shed and closed the door behind him. Collier testified as follows concerning what happened after he entered the shed.

"Q. Now, once you got inside, you spoke directly to Mr. Frye, did you not?

"A. Yes, I did.

"Q. What did you say to him, again?

"A. Asked him would he move the cart that was next to my car.

"Q. But, it wasn't next to your car, was it?

"A. I asked him would he remove it, because it had

this crystal violet. And he knows this would blow onto a white car.

"Q. All right. And what did he do at that time?

"A. Put his finger in my face and said.

"Q. Which finger was that?

"A. Are you talking about hand—which hand? His index finger.

"Q. All right. Which hand then?

"A. I don't know which hand. I know his finger was in my face.

"Q. Did he poke you in the eye with that hand?

"A. No, not with his finger.

"Q. And what did he say to you?

"A. He told me if I wanted anything moved, move my car.

"Q. And what did you say to him, again?

"A. At the time, I told him, 'Don't put your finger in my face.'

"Q. Did he touch you with his finger?

"A. He had it up in my nose.

"Q. Did he touch you with his finger?

"A. He had it up in my nose.

"Q. Was he waving it? If you will allow me [indicating], without a feeling of being assaulted—was he waving his finger or was he touching you?

"A. He had his finger up in my nose, very close to my nose.

"Q. Was he touching you?

"A. He did not touch me at that time. He had it up in my face, though.

"Q. You said, 'Don't wave your finger.' Did you hit the finger away?

"A. I pushed the hand. I made a motion to push his hand."

The purport of the testimony of Frye is that Collier followed him into the shed, closed the door and approached him; that Collier grabbed Frye and threw him down; that Frye came up with both hands open, at which time Collier struck him several times; and, that he received severe fractures about his face.

62

An examination of the record forces the conclusion that Collier was the aggressor; that he pursued Frye; that Collier struck the first blow; and that Frye merely attempted to prevent injury to his person.

It was incumbent upon the city of Cincinnati to prove beyond a reasonable doubt that Frye was guilty of assault and battery before he could be convicted. The manifest weight of the evidence forces the conclusion that Frye is not guilty as charged.

It follows that the judgment of the trial court herein must be and is reversed, and the defendant, Frye, is discharged.

*Judgment reversed.*

SHANNON, P. J., and HILDEBRANT, J., concur.